UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

DANIELLE BIANCHETTI, )
 )
   *Plaintiff*, )
 )
v. ) No. 1:17-cv-155-SKL
 )
COMMISSIONER OF SOCIAL SECURITY, )
 )
   *Defendant*. )

**MEMORANDUM AND ORDER**

Plaintiff Danielle Bianchetti ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for judgment [Docs. 13 & 16] and filed briefs in support of their respective motions [Docs. 14 & 17]. This matter is now ripe. For the reasons stated below, Plaintiff's motion for judgment on the administrative record [Doc. 13] will be **DENIED**; the Commissioner's motion for summary judgment [Doc. 16] will be **GRANTED**; and the decision of the Commissioner will be **AFFIRMED**.

I. **ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for DIB in July 2012, and for SSI on August 26, 2013, alleging disability beginning February 14, 2011 (Transcript [Doc. 9] ("Tr.") 11, 186-200). Plaintiff's claims were denied initially and upon reconsideration, and she requested a hearing (Tr. 118-22, 130-32, 133-35, 139). The administrative law judge ("ALJ") held a hearing on April 8, 2016, during which Plaintiff was represented by an attorney (Tr. 26-61). The ALJ issued a decision on May 5, 2016, finding that Plaintiff was not under a "disability" as defined in the Social Security

Act (the "Act") because she retained the residual functional capacity ("RFC") to perform light work with additional restrictions (Tr. 8-25). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-7). Plaintiff timely filed the instant action [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born in 1976 and alleges disability beginning at age 34 due to an injury (Tr. 20, 36). Plaintiff was 39 years old on the date of her administrative hearing (Tr. 20). She can communicate in English, she graduated from high school (Tr. 20, 32), and she has past work as a food server, office clerk, secretary, temporary worker/general laborer, and babysitter (Tr. 20).

### B. Medical Records

The administrative record contains extensive medical records that have been summarized by the parties and the ALJ. Only the portions of Plaintiff's medical records relevant to the parties' arguments will be addressed herein, but all relevant records have been reviewed.

### C. Hearing Testimony

At a hearing held April 8, 2016, Plaintiff testified (Tr. 30-50), as did a vocational expert ("VE") (Tr. 51-60). The Court has carefully reviewed the transcript of that testimony.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th

2

Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x. at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration (the "SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through March 31, 2013 (Tr. 13). At step one of the sequential process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since the alleged disability onset date, February 14, 2011 (Tr. 13). At step two, the ALJ found Plaintiff had the following severe impairments: cervical degenerative disc disease ("DDD"), lumbar herniated disc, and DDD post laminectomy with radiculopathy (Tr. 13). The ALJ further found Plaintiff's referenced impairments caused significant limitation in her ability to perform basic work activities (Tr. 13).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-14). The ALJ specifically considered Listing 1.04, and determined that "none of the pathology listed in . . . listing 1.04 is present, and [Plaintiff] has retained the ability to get around and ambulate." (Tr. 14). The ALJ next determined Plaintiff had the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b). Function by function, the claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can engage in pushing and pulling with lower extremities . . . limited to frequent. The claimant is limited to occasional postural limitations, but cannot climb ladders, ropes, and scaffolds, but balance can be accomplished on an unlimited basis. The claimant is not to engage in work that requires exposure to hazards, such as moving machinery.

(Tr. 14). At step four, the ALJ found Plaintiff is unable to perform any past relevant work (Tr. 19-20). At step five, however, the ALJ found Plaintiff was able to perform other work existing in significant numbers in the national economy such as mail clerk, production assembler, and tester/inspector (Tr. 20-21). These findings led to the ALJ's determination that Plaintiff was not

under a disability at any time from the alleged onset date of February 14, 2011, through the date of the ALJ's decision (Tr. 21).

## IV. ANALYSIS

Plaintiff asserts this matter should be reversed and benefits awarded, or in the alternative remanded for further proceedings, because: (1) the "ALJ's findings regarding Listing 1.04 are not supported by substantial evidence," and (2) the "ALJ's findings regarding Plaintiff's residual functional capacity are not supported by substantial evidence." [Doc. 14 at Page ID # 803, 805].

Plaintiff also briefly states that "at an absolute minimum, Plaintiff is entitled to a closed period of benefits." [Doc. 14 at Page ID # 807]. She does not, however, identify any particular period of time. Accordingly, the Court finds Plaintiff has waived any argument for a closed period of benefits, and the Court will not address this issue further. *See Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived")).

### A. Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g).

Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not reweigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v.*

*Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *Woods*, 2009 WL 3153153, at *7 (citing *McPherson*, 125 F.3d at 995-96 (6th Cir. 1997)).

### B. Listing 1.04(A)

Listing 1.04 covers disorders of the spine, including DDD, and requires that the disorder result in "compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Listing 1.04(A) further requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* Accordingly, in addition to demonstrating a spinal disorder that results in the "compromise of a nerve root," Plaintiff must show (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss, (4) sensory or reflex loss, and (5) sitting and supine positive straight-leg test results, in order to meet the requirements of Listing 1.04(A). *Id.*

Plaintiff has the burden of proving that her impairments meet or medically equal the criteria of Listing 1.04(A) by pointing to specific medical findings that satisfy all of the criteria of the listing. *Wredt ex rel. E.E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at *5 (E.D. Tenn. Jan. 23, 2014) (citations omitted). Plaintiff cannot satisfy the listing unless she can prove all of the criteria are present. *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987) (citation omitted); *see also Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) (citation omitted) (A claimant "must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the

impairment has such equivalency."). "An impairment that manifests only some of [the] criteria, no matter how severely, does not qualify." *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (citations omitted).

Further, "[b]ecause satisfying the listings yields an automatic determination of disability . . . the evidentiary standards [at step three] . . . are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x. 533, 539 (6th Cir. 2014) (citations omitted). Finally, "[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(D).

Plaintiff argues that she "exactly and relatively consistently meets every requirement" of Listing 1.04, focusing specifically on Listing 1.04(A) [Doc. 14 at Page ID # 803-05]. The ALJ discussed the requirements of Listing 1.04(A) and determined the record did not support a finding that Plaintiff met or medically equaled this listing, holding:

> Based on the results of numerous routine examinations and diagnostic imaging, none of the aforementioned abnormalities have been detected. Imaging of the cervical spine has uncovered degenerative disc disease, but no visible cord or nerve compression. Additionally, [an] MRI of the lumbar spine revealed a moderately large left paracentral disc protrusion at L4-L5 level, and imaging of the dorsal spine revealed a small disc protrusion[] at T8-T9 level and T9 to T10 levels. Subsequent imaging taken in October 2012, detected a L4/L5 disc extrusion with disc material **compressing the left L5 nerve root**. Because of the pathology in the claimant's spine and her complaints of pain traveling from her back to the lower extremities, the claimant underwent an EMG. The results of the EMG were unremarkable as there is no electrodiagnostic evidence of lumbosacral nerve root injury on either side.
>
> Nonetheless, I note that in October 2011, and February 2013 the claimant was noted as having positive straight leg raise testing. However, I also note that during an examination when positive straight leg testing was detected, the claimant also had normal motor strength of 5/5 for all muscle groups of the lower extremities, and

8

> remained able to ambulate. To that end, the mere detection of positive straight leg testing during multiple examinations was inconsistent with other findings. **I also note there is no evidence of nerve root compression**, which at times is present with positive straight leg raise testing, and required to meet listing. Thus, I emphasize that although the claimant complained of pain and discomfort due to the aforementioned pathology in the cervical and lumbar spine, none of the pathology listed in . . . listing 1.04 is present, and she has retained the ability to get around and ambulate. In turn, I find the claimant's impairments of the cervical and lumbar spine do not meet the listing level of severity.

(Tr. 14 (citations to administrative record omitted; emphasis added)).

Plaintiff contends the ALJ erred in concluding that none of the pathologies in Listing 1.04(A) were detected. Plaintiff further contends that the ALJ's explanation of her rationale is so "garbled and self-contradictory that it renders the decision unreviewable." [Doc. 14 at Page ID # 805].

Taking the second argument first, it is true the ALJ stated there was "no evidence of nerve root compression," when, in the previous paragraph, the ALJ acknowledged that an MRI taken in 2012 did show nerve root compression at the L5 level (Tr. 14). This does appear to be self-contradictory; however, it is clearly not the case that the ALJ overlooked the MRI showing nerve root compression. Perhaps the ALJ misspoke when she said there was "no evidence" of nerve root compression, or perhaps she was referring to the February 2013 MRI that showed a "disc extrusion which **contacts**" but does not compress the L5 nerve root (Tr. 280 (emphasis added)). That same February 2013 MRI (performed after the March 2012 MRI) also states that there is "[n]o compression deformity." (Tr. 280). Even the March 2012 MRI findings regarding "compression" were equivocal. The person who interpreted the MRI found that, despite the L5 compression, the "vertebral bodies are normal in height, shape, and alignment. . . . The lumbar spinal cord and cauda equine are normal in size, shape, and signal throughout all sequences." (Tr. 296). Moreover, an

April 2011 MRI showed a disc protrusion that was "displacing the left L5 nerve root origin," but the MRI interpretation does not state there was nerve root compression, and describes Plaintiff's DDD at L4-L5 as "[m]ild to moderate" (Tr. 343). A January 2012 EMG study showed "no electrodiagnostic evidence of lumbosacral nerve root injury on either side." (Tr. 473). And, a March 2016 MRI showed "[n]o significant findings at L5-S1," "[n]o canal stenosis" at L4-L5, and overall "[n]o disc herniation, canal stenosis, or neural displacement." (Tr. 727). In any event, the Court finds the alleged inconsistency concerning the nerve root compression does not render the ALJ's step three determination "unreviewable," nor does it call for a reversal or remand.

Plaintiff also suggests there is some inconsistency in the ALJ's discussion of the straight leg raise tests, because the ALJ acknowledged there were positive results, but then also stated that none of the "abnormalities" or "patholog[ies]" required for Listing 1.04 were present (Tr. 14). As Plaintiff notes, positive straight leg test results are indeed one of the criteria for Listing 1.04(A). However, it is clear from the ALJ's decision that the ALJ did not find the positive straight leg raise test results well-supported by other evidence in the record, and therefore did not find them sufficient to meet the "strenuous" evidentiary burden for step three. *See Peterson*, 552 F. App'x. at 539. Specifically, the ALJ noted that during one exam where positive results were found, Plaintiff had "5/5 strength in bilateral lower extremities," and normal deep tendon reflexes (Tr. 14 (citing Tr. 463)). There are negative straight leg results in the record, too (Tr. 487). Again, the Court finds the ALJ adequately explained her findings and it is not "unreviewable."

Plaintiff also argues the ALJ erred in finding none of the criteria were met for Listing 1.04(A). To show she meets the criterion of a compromised nerve root/nerve root compression, Plaintiff cites the MRIs discussed above. As for the remaining criteria, Plaintiff cites her own complaints of lower back pain (citing Tr. 378, 453, 465, 476, 509, 636); examinations showing a

reduced range of motion in her lumbar spine (citing Tr. 277, 721, 732); her complaints of "give-way weakness" and a finding of 4/5 lower extremity motor strength (citing Tr. 500, 665, 732, 745); her own complaint of numbness and tingling in her right arm, lower back, and legs (citing Tr. 636); and positive straight leg test results (citing Tr. 482, 667) [Doc. 14 at Page ID # 804-05].

Defendant concedes there is evidence showing *some* of the criteria of Listing 1.04(A)[1] [Doc. 17 at Page ID # 818]. Defendant argues the ALJ's conclusion about Listing 1.04(A) is nevertheless supported by substantial evidence, because an examination of the record as a whole shows that not all of the criteria are satisfied [*id.* at Page ID # 818-19]. The Court agrees with Defendant.

Regarding the compromise of a nerve root/nerve root compression, the Court has already addressed the MRIs. Plaintiff herself recognizes that the February 2013 MRI showed that the L5 nerve root was only contacted by a disc protrusion, not compressed [Doc. 14 at Page ID # 804]. The ALJ is permitted to rely on this evidence, weigh it against the other MRIs and medical evidence in the record, and make a determination concerning whether this criteria of Listing 1.04(A) is met.

As for the other criteria, Defendant points out that Plaintiff cites to many of her own subjective complaints [Doc. 17 at Page ID # 821]. While "pain or other symptoms may be an important factor contributing to functional loss that must be evaluated," the regulations also require

---

[1] Defendant points out that Plaintiff "at no time demonstrated an inability to ambulate" [Doc. 17 at Page ID # 818]. Plaintiff does not address her ability to ambulate; however, the inability to ambulate is a criterion of Listing 1.04(C), not Listing 1.04(A). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Plaintiff does not appear to be pursuing a claim of disability based on Listing 1.04(C). To the extent Plaintiff is relying on Listing 1.04(C), her argument fails because, as the ALJ found, she did not present sufficient proof that she was unable to ambulate as defined in the listings.

11

a claimant to present objective proof to qualify as disabled under one of the listings. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(B)(2)(d). Moreover:

> [P]hysical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation; e.g. "He says his leg is weak, numb." Alternative testing methods should be used to verify the abnormal findings; e.g. a seated straight-leg raising test in addition to a supine straight-leg raising test. Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing treatment and evaluation. Care must be taken to ascertain that the reported examination findings are consistent with the individual's daily activities.

*Id.* § 1.00(D).

Plaintiff cites to a complaint she made to Donna Pearson, a physician's assistant, of having "some numbness, tingling right arm, lower back, and bilateral legs" (Tr. 636) to establish the "sensory or reflex loss" required by Listing 1.04(A). This appears to be insufficient under the plain language of Listing 1.00(D). Even if it were not, there is other substantial evidence in the record showing that upon examination Plaintiff's "[s]ensation" was "intact" in October 2013 (Tr. 500), her knee and ankle reflexes were "normal (2+) bilaterally" and her sensation was "intact and symmetrical" in February 2016 (Tr. 667), and her deep tendon reflexes were "symmetrical and normal" in October 2011 (Tr. 487).

Similarly, Plaintiff partially relies on her reports to Ms. Pearson of "give-way weakness" and general "muscle weakness" to support her argument that the ALJ erred in finding the "motor loss" criteria of Listing 1.04(A) was not satisfied [Doc. 14 at Page ID # 804 (citing Tr. 665, 745)]. The only objective evidence Plaintiff cites is an assessment that her gait was "shuffling," and a finding upon examination in October 2013 that her motor strength was "4/5 in bilateral lower extremities" [*id.* (citing Tr. 500, 732)]. However, a February 2016 exam showed full motor strength, as well as normal muscle tone and strength, and a normal gait (Tr. 18, 667). A June 2015

exam showed the same (Tr. 18, 678). In October 2011, Plaintiff also had normal "motor strength of 5/5 for all muscle groups of the lower extremities" (Tr. 487). In light of this other, substantial evidence, the Court finds no error with the ALJ's determination that Plaintiff failed to establish the requisite "motor loss."

Because the Court finds no error with the ALJ's determination that Plaintiff failed to show motor loss or sensory and reflex loss, the Court finds no error with the ALJ's determination that Plaintiff failed to meet the criteria to qualify as disabled under Listing 1.04(A). It is therefore unnecessary for the Court to decide whether the ALJ erred in finding Plaintiff failed to show compromise of a nerve root/nerve root compression. Although there are issues with the MRI proof and the ALJ could have more artfully drafted her step three decision, overall it is reviewable and supported by substantial evidence. Accordingly, Plaintiff's step three/Listing 1.04(A) argument fails, and her motion will be denied in this regard.

## C. RFC

Plaintiff also contends the ALJ's formulation of Plaintiff's RFC is not supported by substantial evidence; specifically, she attacks the different weights assigned to the medical opinions [Doc. 14 at Page ID # 805-07]. She argues that "her RFC is plainly below sedentary" [*id.* at Page ID # 807].

As stated above, the ALJ found Plaintiff capable of a reduced range of light work (Tr. 14). Regarding the medical opinions, the ALJ noted "the medical record contains numerous opinions from treating, examining and non-examining physicians regarding the work-related restrictions imposed by the claimant's impairments. . . . [T]he common denominator is that none of these physicians has offered an opinion that the claimant is restricted from working." (Tr. 18).

A claimant's RFC is the most that claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

The ALJ is "tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b); *Bell v. Barnhart*, 148 F. App'x 277, 285 (6th Cir. 2005)); *see also* 20 C.F.R. § 404.1527(b). The ALJ must determine which medical findings and opinions to credit and which to reject. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (In determining a claimant's RFC, 'the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians.").

### 1. The ALJ's Treatment of the Medical Opinion Evidence

Plaintiff first focuses on the ALJ's consideration of the opinion of Stephen K. Goewey, M.D., a consultative examiner who examined Plaintiff in October 2013 [Doc. 14 at Page ID # 805-06; *see also* Tr. 498-500]. Dr. Goewey noted that Plaintiff had a fusion of her L4-L5 vertebrae in June 2013, and that Plaintiff "reports continued pain features and mild improvement . . . since surgery." (Tr. 498). Under a section titled "Work Expectations," he found:

> Based upon the above history and physical as well as no medical records are available at this time, I estimate that the claimant would be able to sit without restrictions, stand and walk between four to six hours, lift and carry between 10 to 20 lbs occasionally. These are non-permanent restrictions as the claimant's position is likely to improve postoperatively given no recent surgery. No assistive device is required.

(Tr. 499). The ALJ gave Dr. Goewey's opinion "considerable weight," but nevertheless crafted a slightly less restrictive RFC, emphasizing that Dr. Goewey did not believe the assigned limitations would be permanent (Tr. 19).

Plaintiff argues Dr. Goewey's opinion reflects a limitation to *sedentary* work, rendering the ALJ's light work RFC not supported. The Court rejects this argument, because Dr. Goewey's opinion is plainly consistent with the requirements for "Light work" under the regulation. *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."). The ALJ slightly deviated from Dr. Goewey's opinion by finding Plaintiff capable of lifting and carrying up to 20 pounds occasionally, and 10 pounds frequently (Tr. 14), whereas Dr. Goewey more generally states that Plaintiff can "lift and carry between 10 and 20 pounds occasionally," and he gives no opinion regarding what weight Plaintiff can lift on a frequent basis. Regardless, Dr. Goewey clearly did not find Plaintiff was limited to sedentary work, which only allows up to 10 pounds of lifting and carrying, and only occasional walking and standing. 20 C.F.R. § 404.1567(a).

Plaintiff next argues, or at least suggests, that the ALJ should have credited the opinion of Donna Pearson, a physician's assistant [Doc. 14 at Page ID # 806]. She argues the ALJ "summarily

15

dismissed" PA Pearson's opinion, an error requiring reversal or remand because PA Pearson was the only "treating medical provider" to offer an opinion [*id.*].

PA Pearson gave the following opinion in November 2013:

> [Plaintiff] is a very pleasant female who we have been treating for quite some time now. She . . . underwent a lumbar fusion this past spring and summer. She is currently not working because of her surgery. She will be limited permanently with any extreme lifting duties. She will not be returning to her previous employment. Her level of work will be determined at her recovery 12 months post-surgery. She is currently not working due to being under rehabilitation from her spine surgery . . . .

(Tr. 501).

The ALJ gave "some weight" to PA Pearson's opinion that Plaintiff could not engage in "extreme lifting," noting the opinion was "supported by her symptoms," and limiting Plaintiff to lifting 20 pounds occasionally and 10 pounds frequently (Tr. 14, 18-19). The ALJ also found, consistent with PA Pearson, that Plaintiff could not return to her past work (Tr. 19). The ALJ only gave "little weight" to PA Pearson's opinion that Plaintiff could not work for twelve months, noting that "such a finding is reserved to the Commissioner, and is not typically standard for musculoskeletal impairments of the spine," and further noting that PA Pearson is not a medical doctor (Tr. 19). Thus, contrary to Plaintiff's argument, the ALJ did not "summarily dismiss" PA Pearson's opinion.

The determination of whether Plaintiff is unable to work for twelve months undoubtedly is "reserved to the Commissioner," and therefore "not entitled to any special significance," even when the determination comes from a treating *physician*, which PA Pearson is not. 20 C.F.R. § 404.1527(d)(1); 416.927(d)(1). Because PA Pearson is an "other source," rather than an "acceptable medical source," the ALJ was only required to *consider* PA Pearson's opinion, which the ALJ certainly did. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (citing

16

Social Security Ruling ("SSR") 06-03p,[2] 2006 WL 2329939 (Aug. 9, 2006)). ALJs also "generally should explain the weight given to opinions" of other sources. *Id.* (citing SSR 06-03p, 2006 WL 2329939). Again, the ALJ did so—she even explained the different weight she assigned to specific aspects of PA Pearson's opinion, giving "some weight" to the part of PA Pearson's opinion that expressed a view regarding a functional limitation. *Cf. Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532,541 (6th Cir. 2007) ("As it stands, the ALJ's decision was devoid of any degree of specific consideration of nurse practitioner Hasselle's functional assessments."). The Court rejects any argument that the ALJ's decision should be reversed or remanded as a result of the ALJ's treatment of PA Pearson's opinions.

Plaintiff next argues the ALJ erred in assigning "great weight" to the opinions of the state agency non-examining doctors, both of whom found Plaintiff capable of light work with additional postural and environmental restrictions (Tr. 68-70, 82-86, 97-98). Because these doctors did not examine Plaintiff or have the entire case file available to them, she argues they are "mere rubber-stamped opinions," which are "not worth the weight they are printed on." [Doc. 14 at Page ID # 806].

---

[2] On January 18, 2017, the SSA published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); *see also* 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844-01). Pursuant to these revisions, the "treating physician rule" and SSRs 96-2p, 96-5p, and 06-03p were rescinded as of March 27, 2017, and claims filed after that date are not covered by these rulings. *See* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017); *see also* 20 C.F.R. §§ 404.1520c & 416.920c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"); 20 C.F.R. §§ 404.1527 & 416.927 ("Evaluating opinion evidence for claims filed before March 27, 2017). Claims filed prior to March 27, 2017, are still covered by the prior versions of the rules and SSRs, which are the versions the Court cites and relies upon in considering Plaintiff's arguments, as her applications were filed in February 2012 (DIB), and August 2013 (SSI).

As argued by Defendant, however, the regulations provide that ALJs are required to consider the opinions of such state agency psychological consultants because they "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e). Moreover, a properly balanced analysis can allow the Commissioner to defer ultimately more to the opinions of consultative doctors than to those of treating physicians. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from . . . medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (citing SSR 96-6p, 1996 WL 374180, at *3).

In crediting the state agency physicians' opinions, the ALJ noted they were consistent with evidence in the record, as well as with Plaintiff's "daily functioning and her positive response to treatment." (Tr. 19). Plaintiff does not dispute the ALJ's actual reasoning for crediting the state agency physicians' opinions; her only argument is that they should not have been credited because they did not examine her and did not have the entire case record, which was still developing. The ALJ surely is familiar with the role of the state agency physicians, and was therefore aware they did not examine or treat Plaintiff. Moreover, although the state agency physicians did not have the complete case record before them, the ALJ specifically discussed the evidence dating from the fall of 2014 (after the state agency opinions were submitted) through March 2016. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (Because the medical record indicated ongoing treatment after submission of state agency consultants' opinions, ALJ was required to "at least consider[]" the new facts "before giving greater weight to an opinion that is not 'based on a review of a complete case record." (some quotation marks and citations omitted)). Plaintiff's arguments in this regard are nor persuasive.

Plaintiff also briefly addresses the fact that the ALJ assigned "some weight" to the opinion of consultative examiner Thomas Mullady, M.D. [Doc. 14 at Page ID # 806; Tr. 19, 276-78]. Dr. Mullady found:

> In relation to the impairments the patient retains the capacity to occasionally lift and/or carry for up to one-third of an 8-hour workday a maximum of 20 pounds. She would be able to frequently lift and/or carry from one-third to two-thirds of an 8-hour workday a maximum of 10 pounds. She would be able to stand and/or walk with normal breaks for at least 2 hours in an 8-hour workday, and would be able to sit with normal breaks for at least 6 hours in an 8-hour workday.

(Tr. 278). The ALJ found Dr. Mullady's opinion was "consistent with the evidence from his examination, and the results of several other examinations, which illustrates she is able to work at the light exertional level. His limitation to standing and walking at least two hours out of eight is somewhat non specific." (Tr. 19).

Plaintiff does not challenge the ALJ's stated reason for partially crediting Dr. Mullady—that Dr. Mullady's opinion was consistent with his examination and with other evidence in the record. Instead, Plaintiff notes Dr. Mullady examined Plaintiff before her 2013 spinal fusion surgery, and argues he could not "possibly have known of Plaintiff's incoming regression of symptoms in 2014." [Doc. 14 at Page ID # 806-07]. However, it is clear from the decision that the ALJ considered the early timing of Dr. Mullady's opinion, as she noted it was rendered "[s]hortly after the onset date" (Tr. 19). Moreover, Dr. Mullady's opinion is consistent with the opinions of the state agency physicians, who both examined Plaintiff's medical record long after her surgery.

In sum, Plaintiff's arguments concerning the weight assigned to the opinion evidence fail. Because they form the entire basis of her RFC challenge, her broader argument that the RFC assessment is not supported by substantial evidence also fails. As the ALJ noted, no physician

opined that Plaintiff had functional limitations that totally prevented her from working. The ALJ partially credited medical opinions from before, shortly after, and long after Plaintiff's surgery, which indicated Plaintiff was capable of light work. The ALJ also considered and discussed the most recent medical evidence before her (Tr. 17). These opinions and the other medical evidence discussed herein provide the substantial evidence needed to support the ALJ's assessment of Plaintiff's RFC.

## V. CONCLUSION

For the foregoing reasons,

1) Plaintiff's motion for judgment on the administrative record [Doc. 13] is **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 16] is **GRANTED**; and

3) The Commissioner's decision denying benefits is **AFFIRMED.**

SO ORDERED.

ENTER.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE